*MiiCs & Partners America Inc., et al. v. Toshiba, et al.*
C.A. No. 1:14-cv-803-RGA

*MiiCs & Partners America Inc., et al. v. Funai, et al.*
C.A. No. 1:14-cv-804-RGA

# EXHIBIT A

*Discovery Dispute Letter – 1/4/17 – Conference (1:30 pm)*

# A MODEL ORDER LIMITING EXCESS PATENT CLAIMS AND PRIOR ART

Although cost-effective patent enforcement is vital to innovation, patent litigation has become increasingly expensive.[1] Courts and the patent bar have attempted to control the cost and complexity of patent cases with some success. The adoption of patent rules in many jurisdictions, beginning in 2000, has improved predictability in patent case management.[2] More recently, the Federal Circuit Advisory Council's E-Discovery Model Order has helped reduce the problem of excessive e-discovery costs.[3] But problems persist.

In many patent cases, the sheer number of issues presented can be overwhelming. According to one study, litigated patents contain an average of 24 claims and cite 31 prior art references.[4] There is a consensus that the numbers of asserted claims, claim terms, and prior art references in patent cases are often problematically excessive. Cases with over a hundred asserted claims and over a hundred asserted prior art references during discovery are common. The identification of an unmanageable number of products can be a problem too.

Lack of discipline by the asserting party in preparing its case is often why excess issues are maintained. The inclusion of superfluous claims and prior art can function to "hide the ball." The result is an asymmetric burden on the responding party (and the trial court) because the asserting party often has a better sense of which issues it will ultimately pursue.

Excess issues, unsurprisingly, inflate litigation costs. Each unnecessary asserted claim and prior art reference must be analyzed and charted, among a

---

[1] *See* Emery G. Lee III & Thomas E. Willging, *Litigation Costs in Civil Cases: Multivariate Analysis* 8 (Fed. Judicial Ctr. 2010) ("Intellectual Property cases had costs almost 62% higher, all else equal, than the baseline 'Other' category."); AIPLA Report of the Economic Survey 2011 at 35–36 (average cost of a patent litigation with more than $25 million at risk is $6 million).

[2] *See* James Ware & Brian Davy, *The History, Content, Application and Influence of the Northern District of California's Patent Local Rules*, 25 Santa Clara Computer & High Tech. L.J. 965 (2009).

[3] *See* Federal Circuit Advisory Council, An E-Discovery Model Order, http://www.cafc.uscourts.gov/images/stories/announcements/Ediscovery_Model_Order.pdf.

[4] *See* John R. Allison, Mark A. Lemley & Joshua Walker, *Extreme Value or Trolls on Top? The Characteristics of the Most-Litigated Patents*, 158 U. Penn. L. Rev. 1 (2009).

myriad of other unnecessary case-management tasks that follow. These attorney chores generate disputes, frequently unrelated to the merits, which unduly burden the judiciary. The per-case resources a busy judge can afford to invest in a patent case is only a fraction of what the parties and their law firms are willing to expend.

Focusing patent cases to the issues at the core of the dispute will reduce the burden on courts and lower the expense for the parties. In addition, a greater focus on the true issues will improve the quality of the adjudicatory process for all.

## THE MODEL ORDER

Many courts have issued orders limiting the number of claims and prior art references in patent cases on an *ad hoc* basis. Given the potential benefits of such orders for litigants and the courts alike, it is surprising that courts do not issue such orders more routinely, and that there is no systematic approach to this issue. Recent Federal Circuit authority, including *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303 (Fed. Cir. 2011), has validated this practice and galvanized interest in this case management tool.

After reviewing existing authority, and drawing on collective experience, the Committee has prepared the attached Model Order, which has been unanimously approved by the Advisory Council. The Committee considered several key issues:

- **What.** What should be limited—number of claims, number of prior art references, number of invalidity theories, number of terms for claim construction, number of accused products, or some combination?

- **Timing.** When should the limits on asserted claims and prior art references take effect? Should the limits be applied only once, or should a phased approach gradually narrowing the scope of the case be followed? How should the need for discovery be balanced against the value of early streamlining?

- **Limitations.** How should limits be formulated? Should the limits on number of claims apply per case or per patent? How should the limits be adjusted based on the variety of case-specific factors that courts have considered? How can the due process rights of litigants be protected?

- **Effect.** What effect does the judgment have on non-elected patent claims and prior art references?

The Model Order reflects the Committee's conclusion that default numerical limits on the number of asserted patent claims and prior art references are workable. Furthermore, to balance the need for discovery against the benefits of early streamlining, the Committee settled on a phased implementation of these numerical limits.

Two logical points for imposing limits were chosen to maximize efficiency while preserving the ability of the parties to make informed choices about which claims and prior art to assert: (1) after production of "core" technical documents but before claim construction, and (2) after claim construction but before expert reports. In this respect, the Model Order complements the Federal Circuit Advisory Council's Model E-Discovery Order, which promotes streamlined "core" technical discovery early in the case. In addition, the Model Order complements patent case schedules that provide for claim construction during discovery and expert reports after claim construction. But the Model Order can apply, with appropriate adjustments, to patent cases managed with differing schedules.

The Committee hopes this Model Order serves as a useful tool for effective case management and that it encourages the productive discussion of this topic. The improvement of patent litigation is a work-in-progress. Others may well see fit to modify, evolve or expand this model.

Moreover, because it is a model, the order may not fit all circumstances and customization is certainly appropriate. As part of case-specific tailoring, this order may be coupled with other case management tools such as the use of binding "representative claims." *See Panduit Corp. v. Dennison Mfg. Co., Inc.*, 836 F.2d 1329, 1331 (Fed. Cir. 1987) ("The term "representative claims" is well understood in patent litigation, and the procedure followed in this trial is familiar to any experienced patent litigator."). As an example, the desire for a comprehensive injunction might make representative claims a useful procedure to consider.

The Committee recognizes that there are problems beyond those addressed in this model order that deserve study because they too can bloat patent cases. This includes the quality of the complaints that are based on Form 18 to the Federal Rules of Civil Procedure and unwieldy product identifications that include a multitude of products without the rational selection of representative products. While there certainly are cases that may well warrant limits and other remedies in these areas, for simplicity this model order is focused on the broad and compelling need to responsibly limit claims and prior art assertions in appropriate cases.

**Model Order Committee**

Chief Judge Randall Rader (Fed. Cir)
Chief Judge Leonard Davis (E.D. Tex)
Judge Theodore Essex (ITC)
Judge Katherine Forrest (S.D.N.Y.)
Judge Lucy Koh (N.D. Cal.)
Tina Chappell
Morgan Chu
Sean Cunningham
Isabella Fu
Mike McKool
Edward Reines (Chair)
John Whealan

Ably assisted by Kori Anne Bagrowski and Nathan Greenblatt

4

Addendum: Model Order

| | |
|---|---|
| Plaintiff, | Case No.: _____ |
| v. | |
| Defendant. | |

# [MODEL] ORDER LIMITING EXCESS PATENT CLAIMS AND PRIOR ART

The Court ORDERS[1] as follows:

1. This Order supplements all other discovery rules and orders. It streamlines the issues in this case to promote a "just, speedy, and inexpensive determination" of this action, as provided by Federal Rule of Civil Procedure 1.

*Phased Limits on Asserted Claims and Prior Art References*

2. Not later than 40 days after the accused infringer is required to produce documents sufficient to show the operation of the accused instrumentalities, the patent claimant shall serve a Preliminary Election of Asserted Claims, which shall assert no more than ten claims from each patent and not more than a total of 32 claims. Not later than 14 days after service of the Preliminary Election of Asserted Claims, the patent defendant shall serve a Preliminary Election of Asserted Prior Art, which shall assert no more than twelve prior art references against each patent and not more than a total of 40 references.[2]

---

[1] The parties are encouraged to discuss limits lower than those set forth in this Model Order based on case-specific factors such as commonality among asserted patents, the number and diversity of accused products, the complexity of the technology, the complexity of the patent claims, and the complexity and number of other issues in the case that will be presented to the judge and/or jury. In general, the more patents that are in the case, the lower the per-patent limits should be. The parties shall jointly submit any proposed modifications in their Federal Rule of Civil Procedure 26(f) Discovery Plan.

[2] For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist. In cases involving several patent families or diverse technologies, or disparate claims within a patent, the court should consider flexibly whether circumstances warrant expanding the limits on prior art.

3. Not later than 28 days after the Court issues its Claim Construction Order, the patent claimant shall serve a Final Election of Asserted Claims, which shall identify no more than five asserted claims per patent from among the ten previously identified claims and no more than a total of 16 claims. Not later than 14 days after service of a Final Election of Asserted Claims, the patent defendant shall serve a Final Election of Asserted Prior Art, which shall identify no more than six asserted prior art references per patent from among the twelve prior art references previously identified for that particular patent and no more than a total of 20 references.

4. If the patent claimant asserts infringement of only one patent, all per-patent limits in this order are increased by 50%, rounding up.

*Modification of this Order*

5. Upon a showing of diligence, and with due consideration for prejudice, a party may seek to modify this order for good cause shown. Any request to increase the limits contained in this order must specifically show why the inclusion of additional asserted claims or prior art references is warranted. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1202, 1312–13 (Fed.

Cir. 2011). A failure to seek such a modification will constitute acquiescence to the limits contained in this Order.[3]

---

[3] This Model Order contemplates that the parties and the Court may further narrow the issues during pretrial proceedings in order to present a manageable case at trial.