1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3      MIIC'S & PARTNERS AMERICA      :    CIVIL ACTION
       INC., et al.,                  :
4                         Plaintiffs, :
                                       :
5           vs.                        :
                                       :
6      TOSHIBA CORPORATION, et         :
       al.,                            :
7                         Defendants,  :
                                       :
8                         -and-        :
                                       :
9      SAMSUNG DISPLAY CO., LTD.,      :
                          Intervenor.  :
10     ------------------------ :    NO. 14-803-RGA
       MIIC'S & PARTNERS AMERICA      :
11     INC., et al.,                  :    CIVIL ACTION
                          Plaintiffs, :
12                                     :
13          vs.                        :
                                       :
14     FUNAI ELECTIC CO. LTD, et       :
       al,                             :
                          Defendants.  :
15                                     :
16                        -and-        :
                                       :
17     SAMSUNG DISPLAY CO., LTD.,      :
                          Intervenor.  :
                                       :
18                                     :    NO. 14-804-RGA

19

20                               Wilmington, Delaware
                                 Wednesday, January 4, 2017
21                               1:37 o'clock, p.m.

22                          - - -

23     BEFORE:  HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

24                               Valerie J. Gunning
                                 Official Court Reporter
25

1    APPEARANCES:

2

3              PANITCH SCHWARZE BELISARIO & NADEL LLP
               BY:  DENNIS JAMES BUTLER, ESQ.

4
                        -and-
5

6              PANITCH SCHWARZE BELISARIO & NADEL LLP
               BY:  BRYON T. WASSERMAN, ESQ.
7                   (Philadelphia, Pennsylvania)

8
                    Counsel for Plaintiffs
9                   MiiCs & Partners America, Inc. and
                    Gold Charm Limited
10

11
               DORSEY & WHITNEY (DELAWARE) LLP
12             BY:  ROBERT W. MALLARD, ESQ.

13
                        -and-
14

15             DORSEY & WHITNEY LLP
               BY:  PAUL T. MEIKLEJOHN, ESQ.
16                  (Seattle, Washington)

17
                    Counsel for Defendants
18                  Toshiba Corporation and Toshiba America
                    Information Systems Inc.
19

20
               YOUNG CONAWAY STARGATT & TAYLOR, LLP
21             BY:  PILAR G. KRAMAN, ESQ.

22
                        -and-
23

24

25

1    APPEARANCES (Continued):

2

3                COVINGTON & BURLING
                 BY:  DAVID A. GARR, ESQ.
                      (Washington, D.C.)

4

5                     Counsel for Intervenor
                      Samsung Display Co., Ltd.

6

7

8                ROSS ARONSTAM & MORITZ LLP
                 BY:  BENJAMIN J. SCHLADWEILER, ESQ.

9

10                        -and-

11               KELLOGG HUBER HANSEN TODD EVANS and FIGEL
                 BY:  JOHN CHRISTOPHER ROZENDAAL, ESQ.

12                    (Washington, D.C.)

13

14                    Counsel for Defendants
                      Funai Electric Co., Ltd.,
                      Funai Corporation, Inc. and P&F USA

15                    Inc.

16                            -   -   -

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S

 2

 3                   (The conference was held in chambers, beginning

 4        at 1:37 p.m.)

 5

 6                   THE COURT:  All right.  Good afternoon.  Please

 7        be seated.

 8                   So this is MiiCs & Partners versus Toshiba,

 9        No. 14-803, and MiiCs and partners versus Funai, No. 14-804.

10        Is that right?

11                   MR. BUTLER:  That is correct.

12                   THE COURT:  By the way, the defendant that I

13        call Funai, is that how you actually pronounce it?

14                   MR. ROZENDAAL:  Funai is how you pronounce it.

15        Yes, sir.

16                   THE COURT:  Okay.  All right.  So, Mr. Butler,

17        you have somebody different with you this afternoon.

18                   MR. BUTLER:  I do.  I have Mr. Wasserman with me

19        this afternoon.

20                   THE COURT:  All right.  Have we met before?

21                   MR. WASSERMAN:  We have, your Honor.

22                   THE COURT:  All right.  Well good to see you

23        again.

24                   MR. WASSERMAN:  Thank you.

25                   THE COURT:  I see Ms. Kraman there.  I see
```

```
 1    Mr. Schladweiler.  And --
 2              MR. ROZENDAAL:  Rozendaal here.
 3              THE COURT:  I was thinking you looked like
 4    somebody else.  Well, in any event, so, Ms. Kraman, who do
 5    you have with you?
 6              MS. KRAMAN:  David Garr for Samsung.
 7              MR. GARR:  Good afternoon.
 8              THE COURT:  Garr?
 9              MR. GARR:  Yes.
10              THE COURT:  And Mr. Schladweiler?
11              MR. SCHLADWEILER:  I have J. C. Rozendaal.
12              THE COURT:  I've certainly seen him before.
13              And, Mr. Mallard, you have with you
14    Mr. Meiklejohn, who I know I have seen before.
15              MR. MEIKLEJOHN:  Yes.
16              THE COURT:  This morning.
17              Okay.  So I read the little.  And I guess I have
18    some thoughts, but one thing I was curious about was
19    defendants who went second said the plaintiffs' answer to an
20    interrogatory was insufficient, which is a bit odd
21    procedurally because the plaintiffs' letter didn't mention
22    it and the defendants didn't file something that would give
23    the plaintiffs an opportunity to respond.
24              Do you have something to say about that?
25              MR. BUTLER:  Well, the issue really is the
```

1    limitation of references.  We've agreed that we would

2    provide an answer to the interrogatory once we have the

3    limitation put in place.

4              THE COURT:  Okay.  So you in your opening letter

5    said, and I forget what the number was, I think you said 66

6    references, and in any event, the defendants have now said,

7    no, no, no.  No more than 36 references.

8              Do you have any comment on that?

9              MR. BUTLER:  So you're right, your Honor.  I

10   don't think we're all that far apart.  The real issue here

11   is, are we going to go with 20 references, which plaintiffs

12   had proposed total over the two cases or 36 references,

13   which defendants and intervenors have proposed over the two

14   cases.

15             THE COURT:  So one of the questions I was

16   wondering about, because if I -- and so it's worth stating.

17   As probably most of you know, I do look to the Federal

18   Circuit Bar Association or Federal Circuit Model Order,

19   which I understand was withdrawn and had no authority, but

20   nevertheless, it seems to me a reasonable thing to look at

21   because it was the product of a lot of people's thought who

22   presumably had some expertise in the area, so I often use

23   that as a kind of starting point as to what is reasonable.

24   But, on the other hand, one of the things that the parties

25   all seem to be agreeing on, or I'm wondering if the parties

1   do agree on, is they're treating it like this is one case as

2   opposed to two cases.

3                And I'm just wondering, since the defendants all

4   have different lawyers, and since the cases are presumably

5   going to be tried separately, whether the -- well, does

6   anybody have any comment on this?

7                MR. GARR:  I will comment on that from the

8   defendants' side.

9                THE COURT:  Okay.

10                MR. GARR:  It is true that there are two cases

11   here and three parties with Samsung Display who I represent

12   as well as Toshiba and Funai, but we have used the idea

13   behind the model order as a starting point, and we realize

14   that given the fact that we have for the most part the same

15   patents across the two cases presenting --

16                THE COURT:  I mean the five that are --

17                MR. GARR:  There are five in one and six in the

18   other.

19                THE COURT:  But the one that has six, that's the

20   same five plus one.  Right?

21                MR. GARR:  That's right.  So across the two

22   cases, we have six patents, total, and we are working

23   together as a defense group to try to streamline things, and

24   can agree that we're all going to go with the same six

25   references for per patent.  That's the way we've looked at

```
 1    it.  We have six different patents.  And while they all sort
 2    of relate somehow to LCD technologies, none of the patents
 3    happen to be related.
 4              THE COURT:  Well, I saw that you said in the
 5    letter, I think your word was "disparate," which is a nice
 6    word.
 7              Do the plaintiffs disagree with that
 8    characterization of the patents?
 9              MR. BUTLER:  They are not in the same family.
10    They are all directed to LCD technology essentially.
11              THE COURT:  But not being --
12              MR. BUTLER:  There's production.
13              THE COURT:  Well, I guess what I'm wondering,
14    perhaps a different way to say this, you know, sometimes
15    you have a case and there are three patents and they're all
16    the same family and one reference deals with 90 percent of
17    each of them.  I mean, the references that the defendants
18    assert, do they assert any of the same references for any of
19    these patents or is it each patent has its own set of
20    references?
21              MR. BUTLER:  I will let the defendants answer
22    that one.
23              MR. GARR:  That's the challenge that we're
24    confronted with here.  They're all different.  There may be
25    one or two references across the whole patents where a
```

1    reference may be applicable to two, but when we say

2    disparate, they're all LCD patents.  One relates to the back

3    light.  Another relates to the frame.  Another relates to

4    the method of making the transistor.  Another relates to the

5    optics and the sort of preventing, improving the view angle

6    characteristic.  So it's not like we have references that

7    are applicable to many patents.

8              THE COURT:  But just to interrupt, what you said

9    at the beginning is essentially, if I had your invalidity

10   contentions, the references cited for, you know, patent one,

11   leaving aside possibly one reference, there are going to be

12   a different set of references than patent two, which is

13   going to be a different set of references than patent three,

14   et cetera?

15             MR. GARR:  That's right, and that's why the

16   model order, 20 reference limit, we don't think makes a lot

17   of sense here.

18             THE COURT:  Okay.  Three references per patent,

19   which is essentially what 20 is, seems kind of skimpy if the

20   patents are all addressing some different technology, even

21   if it's all the general LCD ballpark.

22             So this is what I'm inclined to do.  In fact,

23   I'm pretty sure this is what I'm going to do, but let me

24   just put it out there and I will hear from you if you or

25   anybody wants to speak.

1           But what I'm inclined to do is to say the 36

2    reference reduction -- what I imagine is, because I got from

3    the letters that it didn't seem like the defendants were

4    saying you had to answer the interrogatory before they went

5    to 36.  So what I am imagining is, they go to 36.  You

6    answer the interrogatory.  Depending on what you say in the

7    interrogatory, maybe further reduction is possible, but it

8    seems hard to know -- hard for me to say that before you lay

9    your cards on the table as to what's wrong with all of these

10   references that they have, is to say that I ought to be

11   chopping it down some more.

12           So that's what I'm inclined to do, is to say

13   they go to 36, you answer the interrogatory, and then after

14   you answer the interrogatory, if you've actually given a

15   fulsome answer, and I don't mean that in any personal way,

16   but, you know, a lot of times -- well, the first attempt

17   said nothing, so, you know, you're starting from a low

18   point.  But if you give an answer that really does help

19   narrow the issues, then you might by agreement or even by

20   talking to me if you don't have an agreement, we could

21   narrow it some more, but I don't think it should be narrowed

22   any more right now without knowing what your problems are

23   with the art that they're going to assert.

24           MR. BUTLER:  And I can see absolutely your point

25   in a typical case, but the difference here is all six of

1    these patents have already been through an inter partes

2    review in front of the Patent Trial and Appeal Board with

3    the same two defendants, the same intervenor.  You would

4    think that in that procedure, they certainly put their best

5    foot forward.

6              THE COURT:  Well, wait a second, Mr. Butler.

7    I'm correct in thinking -- I can't remember now.  The reason

8    why we have these patents is these are the ones where the

9    IPRs were denied.  They weren't instituted.  Right?

10             MR. BUTLER:  That's correct.

11             THE COURT:  So my general view is that

12   non-institution is just awash.  I mean, it's certainly

13   legally just awash, but I think practically, it's just a

14   wash, but maybe that's not the point you're making.

15             MR. BUTLER:  So the references were presented to

16   the board.  There was a briefing scheduled.  We laid our

17   cards out on the table.  Defendants and intervenor laid

18   their cards out on the table with respect to invalidity.

19   The board decided, we don't think that this should be

20   instituted and reviewed any longer.  We don't think there's

21   a substantial likelihood of success that the defendants and

22   intervenor will succeed with the references that they

23   presented to us, so, no thanks.  We don't even want to

24   entertain this.

25             THE COURT:  And the point of this is?

1          MR. BUTLER:  That defendants have had their

2    opportunity already with a bunch of references at the Patent

3    Office on invalidity.  We've laid our validity positions out

4    on the table on all six of these patents already, so this

5    isn't a typical case where you have not been through an IPR

6    proceeding, defendants have no idea what our validity

7    positions might be.

8          THE COURT:  Well, but so one of the things is,

9    whatever it is you said in the IPR proceedings, not exactly

10   binding on you in a way that answering it in this

11   interrogatory would be binding on you.  Right?

12         MR. BUTLER:  Well, I'm sure it's all public

13   record.  It's all part of the essential file history of the

14   case.

15         THE COURT:  Right.  But the thing is, you know,

16   you make arguments which, of course, because in the end they

17   didn't resolve anything, they just know what the arguments

18   you made then were.  Maybe you'll make the exact same

19   arguments.  They were winning arguments, so to speak, so

20   maybe you'll make the same arguments now, but they, you

21   know, to speak less like a judge, you need to be locked in.

22   Right?

23         MR. BUTLER:  And maybe the defendants will

24   present the exact same combinations of references, but I

25   doubt it, because the Patent Trial and Appeal Board already

1   looked at the combinations and said, no thanks.

2           THE COURT:  But because it has no precedential

3   effect -- I mean, they can present the exact same things.

4   Right?

5           MR. BUTLER:  Absolutely.  Absolutely.

6           THE COURT:  I mean, maybe they will, maybe they

7   won't.

8           MR. BUTLER:  Right.

9           THE COURT:  But in any event, you're going to

10  get the 36.  You can then lock in as to what your problems

11  with the 36 are and, you know, again, I mean, clearly,

12  they're never going to be actually presenting 36, but before

13  they start going down from 36, they need to know what your

14  arguments -- what you committed to your arguments being.

15  Right?

16          MR. BUTLER:  Absolutely.  I would be surprised

17  if they're a lot different than what --

18          THE COURT:  All right.  Well, that's a different

19  thing.  Yes, maybe they will be, in which case I'm sure

20  you'll be able to answer the interrogatory without too much

21  time passing.

22          So when are you going to reduce to 36?

23          MR. GARR:  We can do that.  I think we just need

24  to -- once we know the number, make sure we get client

25  authority.  Certainly the next day or two.

```
 1                    THE COURT:  All right.

 2                    MR. GARR:  This week.  By the end of the week.

 3                    THE COURT:  Okay.  So you'll reduce the 36 by,

 4       let's just say, Friday, frankly, because I'm correct in

 5       thinking when you say the client, I take it Samsung is in

 6       Korea.  Toshiba is in Japan.  And I guess Funai is Japan,

 7       too?

 8                    MR. ROZENDAAL:  Yes, sir.

 9                    MR. GARR:  We all do late night conference calls

10       on this side of the table.

11                    THE COURT:  Okay.  So, in any event, you know,

12       today is Wednesday.  Why don't you see if you can't reduce

13       on Friday the 36, or by close of business on Friday.

14                    When do you want to answer the interrogatory

15       by?

16                    MR. BUTLER:  Two weeks sounds reasonable to me.

17                    THE COURT:  All right.  So that's -- let me see.

18                    MR. BUTLER:  The 20th.

19                    THE COURT:  All right.  Thank you.  The 20th you

20       can answer the interrogatory, and you all can confer after

21       that.

22                    I take it because you also said in there you're

23       planning on going from 20 to 18 or maybe from 18 to 16 on --

24       wait a second.  Yes.  I guess from 18 to 16 on Funai in

25       terms of asserting claims.
```

1              MR. BUTLER:  We could do that.

2              THE COURT:  Well, so --

3              MR. BUTLER:  If we are going with 36, then the

4    inclination is not to now reduce, but if that's your Honor's

5    position.

6              THE COURT:  I think you ought to get down to 16,

7    which, you know, why don't you just do that at the same time

8    as you are answering the interrogatories, because that will

9    give you the maximum chance to -- those two decisions are

10   related, I think.

11             MR. BUTLER:  Okay.

12             THE COURT:  And depending on what's -- you know,

13   when there's a responsive interrogatory, I'm not going to

14   order you to meet and confer, but I would encourage you to

15   discuss it as to whether some further reduction is possible

16   and say that I will open the hearing from, I guess, the

17   plaintiff, if it turns out that they think the combination

18   of their interrogatory answer -- well, and if they think you

19   really should be reducing it further from the 36.  I just

20   don't know.  Okay?

21             MR. BUTLER:  Can do.

22             MR. GARR:  That seems right.

23             The one other thing I would raise though is that

24   we have two weeks from Friday takes us to January 20th.

25             THE COURT:  Okay.

1          MR. GARR:  And that happens to be under the

2    current schedule the deadline for our opening expert reports

3    on which we will be going forward on invalidity.

4          THE COURT:  All right.  I think you probably

5    should postpone that a little bit.

6          MR. GARR:  I think we may need to talk about

7    that.

8          MR. FOWLER:  We may need to talk about that.

9          THE COURT:  Is there anything else you want to

10   talk about today?

11         MR. GARR:  No.

12         MR. ROZENDAAL:  Your Honor, there's one thing

13   that came out of this morning's meeting that you had with

14   the Toshiba defendants.  I understand that there's going to

15   be early summary judgment briefing on a license issue.  We

16   have a similar issue in the Funai case, where we think more

17   than half of the sales are covered by a license.  We talked

18   with the other side whether it makes sense to do an early

19   motion on that.  We have not yet heard their response.  But

20   I wanted to sort of see if your Honor thought it might make

21   sense to do those on a parallel track since they present

22   similar issues.

23         THE COURT:  I think the answer is fairly obvious

24   what I would think, but I hate to take away from Mr. Butler

25   or Mr. Wasserman.  You know, you made them a proposal.  So

1    why don't we just take this as you're giving me notice of

2    what you are talking about, and why don't you all talk about

3    it.

4                MR. ROZENDAAL:  Understood.  Thank you, your

5    Honor.

6                MR. GARR:  Just in the interests of disclosure,

7    we have not talked about this with the other side, but there

8    is a licensing issue with Samsung Display as well, so I

9    think we'll participate in those conversations.

10               THE COURT:  All right.  Why don't you all

11   participate in the conversation and I expect you'll reach

12   some reasonable result.  So thank you, Mr. Rozendaal.

13               Is there anything else anybody wants to bring

14   up?  Okay.

15               Well, nice to see you.  And so the transcript

16   will serve as the order of the Court if it should be needed,

17   although I don't think it will be.  Okay.

18               (Counsel respond, "Thank you, your Honor.")

19               (Conference concluded at 1:58 p.m.)

20                         -  -  -

21

22

23

24

25