# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIICS & PARTNERS AMERICA, INC. and GOLD CHARM LIMITED., <br><br> Plaintiffs, <br><br> v. <br><br> TOSHIBA CORPORATION and TOSHIBA AMERICAN INFORMATION SYSTEMS, <br><br> Defendants, <br><br> SAMSUNG DISPLAY CO., LTD., <br><br> Intervenor. | No. 14-cv-803 (RGA) |
| MIICS & PARTNERS, AMERICA, INC. and GOLD CHARM LTD., <br><br> Plaintiffs, <br><br> v. <br><br> FUNAI ELECTRIC CO. LTD., FUNAI CORPORATION INC., and P&F USA INC., <br><br> Defendants, <br><br> SAMSUNG DISPLAY CO., LTD., <br><br> Intervenor. | No. 14-cv-804 (RGA) |

## MEMORANDUM OPINION

Dennis J. Butler, John D. Simmons, PANITCH SCHWARZE BELISARIO & NADEL, LLP, Wilmington, Del.; Frederick A. Tecce, Bryon T. Wasserman, Aaron R. Ettelman, ICE MILLER LLP, Philadelphia, Penn.; Anthony Nimmo, ICE MILLER LLP, Chicago, Ill., Keith Jones, Stephen F. Murray, PANITCH SCHWARZE BELISARIO & NADEL, LLP, Philadelphia, Penn., attorneys for Plaintiffs MiiCs & Partners America, Inc. and Gold Charm Limited.

Benjamin J. Schladweiler, Nicholas D. Mozal, ROSS ARONSTAM & MORITZ LLP, Wilmington, Del.; J.C. Rozendaal, Michael E. Joffre, William H. Milliken, STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C., Washington, D.C., attorneys for Defendants Funai Electric Co. Ltd., Funai Corporation Inc., and P&F USA Inc.

Robert W. Mallard, DORSEY & WHITNEY LLP, Wilmington, Del.; Paul T. Meiklejohn, David Tseng, DORSEY & WHITNEY LLP, Seattle, Wash.; Clinton L. Conner, DORSEY & WHITNEY LLP, Minneapolis, Minn., attorneys for Defendants Toshiba Corporation, and Toshiba America Information Systems, Inc.

Adam W. Poff, Pilar G. Kraman, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Del., Kevin B. Collins, Jeffrey H. Lerner, David A. Garr, Jared R. Frisch, COVINGTON & BURLING, LLP, Washington, D.C., Robert T. Haslam, COVINGTON & BURLING, LLP, Redwood Shores, Cal., attorneys for Intervenor Samsung Display Co., Ltd.

August 11, 2017

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiffs Gold Charm and MiiCs filed suit against Defendants Funai and Toshiba, asserting twelve patents, nine against Toshiba and ten against Funai. (No. 14-803 D.I. 35, No 14-804 D.I. 38). Plaintiffs accuse Toshiba and Funai of infringing their patents by making, selling, or importing televisions, laptops, and tablets with infringing liquid crystal display components, TFT sheets, and circuit boards. Plaintiffs acquired rights in the asserted patents from NEC Corporation.

NEC Corporation entered into three separate license agreements that are now at issue. One is a license agreement between Defendant Toshiba[1] and NEC, the prior owner of the asserted patents, covering some of the accused products in this case. Toshiba has moved for partial summary judgment on the basis of that license. (No. 14-803 D.I. 303).

The second is a license agreement between Intervenor Samsung and NEC. Samsung supplies LCD components to Defendants Funai and Toshiba. Samsung has asked me to enter partial summary judgment on Toshiba's and Funai's behalf for any infringement claims that are based on parts supplied by Samsung. (No. 14-803 D.I. 337; No. 14-804 D.I. 310).

---

[1] There are two Toshiba entities and three Funai entities as defendants. In this opinion, I will reference Toshiba and Funai in the singular.

3

The third is a license from NEC to Panasonic. Funai has moved for partial summary judgment in its favor claiming that the license covers its use of the components supplied by two Panasonic subsidiaries.[2] (No. 14-804 D.I. 314).

First, I will discuss the relevant legal standard. Second, I will address Toshiba's motion. Third, I will address Samsung's and Funai's motions together because they similarly implicate application of the Supreme Court's recent decision in *Impression Products, Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523 (2017).

I. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* The moving party may discharge its burden by pointing out that there is an absence of evidence supporting the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[2] Panasonic Industrial Devices Sales (China) Co., Ltd. and Panasonic Industrial Devices Sales (Thailand) Co., Ltd.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 461.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

Because infringement requires an unauthorized use, if I find the patent licenses cover the products manufactured and sold by Defendants, summary judgment of no infringement is appropriate. *See* 35 U.S.C. § 271(a).

## II. TOSHIBA'S MOTION

Toshiba has a Japanese language license[3] with NEC covering end-user products like televisions and computers. The dispute between the parties is whether the license, which specifies that LCD components are not licensed individually, covers an end-user product that incorporates LCD components.

### A. The License

NEC and Toshiba entered into a cross-license for any patents owned by either company or their subsidiaries. (No. 14-803 D.I. 305-1 Ex. A at §§ 1.2, 1.3).[4] The license grants to Toshiba rights "for manufacturing (including cases in which licensed product is manufactured by a Third Party for [NEC]),[5] sales, use, lease, or otherwise disposal of a licensed product...." (*Id.* at § 2.2).

The license covers six categories of end-user products: "Computers," "Televisions," "Large-capacity storage devices...," "AV equipment...," "Mobile telephones...," and "Broadcasting equipment...." (*Id.* at § 1.1). The license specifies, however, "Parts and materials such as IC cards, semiconductor finished goods, liquid crystal panels, and so forth are not included as licensed products." (*Id.*). The

---

[3] The parties submitted an agreed-to English translation, available at No. 14-803 D.I. 305-1 Ex. A.
[4] The parties agree that Japanese contract law applies to the license agreement. (No. 14-803 D.I. 304 at 11; D.I. 319 at 11). There is some dispute between the parties over whether Japanese law requires a court to look at extrinsic evidence always, or, only after finding an ambiguity. Plaintiffs argue that a court considers extrinsic evidence only if the language is ambiguous. (D.I. 319 at 11). Because I think the language of the license unambiguously supports Defendant's position, I do not need to decide whether Plaintiffs' position is correct.
[5] The reference to [NEC] here makes little sense, but that is what the agreement says.

agreement goes on to explain that with a "composite product," that is, a product "combining a licensed product with other product(s)," the "licensed product that is integrated in the composite product shall be handled as a licensed product." (*Id.*).

### B. Analysis

The parties dispute whether the license covers televisions and computers that incorporate LCD panels. Plaintiffs argue televisions incorporating LCD panels are excluded because the license states, "Parts and materials such as… liquid crystal panels, and so forth are not included as licensed products." (D.I. 319 at 12). The clear import of this sentence, however, is that the component parts of a licensed product are not licensed individually, not that licensed products made up of component parts are not licensed. By including "such as" and "so forth" the agreement makes clear that the listed parts, including LCD panels, are only examples. Under Plaintiffs' logic, a television made of any "parts and materials"—so all televisions—would be excluded from the license. Indeed, Plaintiffs' reading would make the entire license illusory, as all six end-user products are composed of "part and materials." Instead, the "parts and materials" language merely specifies that Toshiba cannot, for example, sell LCD panels individually and claim refuge in the license.

Plaintiffs also rely on the "composite product" provision in section 1.1. (*Id.* at 12–13). Plaintiffs contort this provision to argue it carves out from the license the LCD panels in licensed televisions. The LCD panel is a component of the television. The television and LCD panel are not two separate components of some third,

7

unlicensed product. Thus, the "composite product" provision has nothing to do with whether LCD televisions are licensed.

Plaintiffs appear to argue that some of the accused products are not covered because a third party manufactured some of their parts, and the license excludes products with parts manufactured by a third party. (*See id.* at 15). Plaintiffs do not cite any language in the agreement, and I cannot find any, that would support such a broad exclusion. Instead, they only cite to extrinsic evidence suggesting that the parties may have intended to limit products with third-party parts. Extrinsic evidence cannot write a provision into the contract that is not there. Thus, I am rejecting Plaintiffs' argument.

Toshiba's motion for summary judgment of no infringement for any televisions or computers made or sold within the license period is granted. (D.I. 303).

### III. SAMSUNG'S AND FUNAI'S MOTIONS

Samsung[6] sold LCD panels and other parts to Toshiba and Funai. Toshiba and Funai then incorporated those panels into televisions, tablets, and laptops.

---

[6] Plaintiffs challenge Intervenor Samsung's standing to enforce the license. Samsung Display Co. is the intervenor. (*See* No. 14-804 D.I. 338 at 17). Samsung Electronics Co Ltd. is the party to the license. As SDC explained in its opening brief (D.I. 311 at 6 n. 2), SEC "spun off" its LCD business to SDC. (*Id.* (citing D.I. 131 at ¶ 4)). "SDC assumed substantially all of Samsung Electronics' rights and obligations with respect to the LCD business." (D.I. 131 at ¶ 4). Plaintiffs presented no evidence contradicting SDC's assertion. (*See* D.I. 338 at 17). Thus, I find the intervenor here, SDC, has standing to enforce the license. All references to "Samsung" in this opinion are to the intervenor SDC.

Funai also purchased LCD components from two Panasonic subsidiaries and used those parts to make end-user products.

In both cases, the purchasers, Toshiba and Funai, are being sued for infringement for items purchased from a licensed supplier. That is, Samsung and the two Panasonic subsidiaries had licenses to sell LCD components. It is the components that Funai and Toshiba bought from Samsung and the Panasonic subsidiaries that form the basis of Plaintiffs' infringement claims.

On those facts alone, these would be easy motions to dispose of. Funai and Toshiba would have, at least an implied sublicense, *see Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097, 1101 (Fed. Cir. 2004), and, alternatively, Plaintiffs would have exhausted their patent rights. A provision in each license, however, adds a wrinkle to the case. In each license there is language that limits the licensees themselves, Samsung and Panasonic, from making end-user products with the licensed parts.

Samsung, having intervened to enforce its license rights, moves for partial summary judgment on Toshiba's and Funai's behalf. (No. 14-803 D.I. 337; No. 14-804 D.I. 310). Funai also moves for partial summary judgment of no infringement. (No. 14-804 D.I. 314).[7] Plaintiffs resist these motions, arguing that, because the suppliers could not make end-user products themselves, sales of the licensed

---

[7] All further docket cites are to Civil Action No. 14-804 unless otherwise noted.

components to be put into end-user products is not an authorized sale. (D.I. 480 at 8–10). Thus, the sale could not exhaust Plaintiffs' patent rights.

To resolve these motions, first, I will summarize the relevant parts of the Samsung license and, then, the Panasonic license. After that, I will summarize the current state of the law on patent exhaustion and apply it to this case.

### A. The Samsung License

For fifteen million dollars and a cross-license of Samsung's patents, NEC granted Samsung a broad license to its LCD patents. (D.I. 312-1 Ex. 1). The agreement is in English. It specifies that interpretation of the contract is governed by New York law. (D.I. 312-1 Ex. 1 at § 8.1). "Under New York law a court may interpret a contract as a matter of law without resorting to extrinsic evidence if the contract is straightforward and unambiguous." *Sanofi-Aventis v. Apotex, Inc.*, 659 F.3d 1171, 1178 (Fed. Cir. 2011).

The agreement defines the licensed patents as any patent owned by NEC or a subsidiary that "cover[s,] directly or indirectly," a licensed product. (*Id.* at §§ 1.9, 1.10). Licensed products are defined as "LCD Modules," "LCD Panels," "TFT Sheets," "LCD Materials," and any combination thereof. (*Id.* at § 1.8). The license specifically excludes products "designed to be incorporated into projection displays, or electric view finders of digital still cameras or camcorders...." (*Id*).

The license provides a further definition of each of the licensed products. (*See id.* at §§ 1.3–1.7). Relevant here, in defining "LCD Modules," the license specifies that "LCD Modules shall not mean 'LCD End-Use Products'. For the purpose of this

10

[definition], LCD End-Use Products shall mean a complete ready-to-use product having a display function using liquid crystal technology, such as desktop PC monitors, notebook computers, cell phones, personal digital assistants, camcorders, and digital still cameras." (*Id.* at § 1.3).

The license grants Samsung the right to "use, sell, offer for sale, import or otherwise dispose of" the licensed products. (*Id.* at § 3.1).

### B. The Panasonic License

NEC entered into a Japanese language contract[8] with Hitachi, designating the Panasonic entity PLCD[9] as a beneficiary of the license.[10] The license agreement grants a license to all NEC patents for "manufacturing, selling, using, leasing, or otherwise disposing of the Contracted Products." (D.I. 316-1 Ex. B at § 2.2). The "Contracted Products" are defined as "[d]isplay elements using liquid crystals (including active matrices), modules using such display elements, and modules with semiconductor elements directly mounted on liquid crystal device substrates." (*Id.* at § 1.1). The agreement specifies that "modules," as used in that definition, does

---

[8] The parties submitted an agreed-to English language version of the license, available at D.I. 316-1 at 5–7, 13–18.
[9] References to "Panasonic" are to PLCD.
[10] The parties do not brief which jurisdiction's law applies to the contract. It seems likely Japanese law applies. Without a record from which to make this determination, however, I will assume that the normal rule applies and the language of the agreement controls. This seems to be the assumption of the parties, as they only make arguments about the text of the license.

11

not include "ready-to-use products including, without limitation, televisions...." (*Id.*).

As a threshold matter, Plaintiffs have challenged whether this license covers the Panasonic subsidiaries that supply LCDs to Funai. They raised this argument for the first time, not in their summary judgment brief, but in a supplemental brief I allowed them to file in response to Funai's notice of subsequent authority. This argument is waived.

In Funai's opening brief, it detailed from whom it purchased its LCD components. Yet, in Plaintiffs' answering brief, they did not challenge Funai's assertion that its suppliers were licensed.

Plaintiffs do not claim that the facts or argument were unavailable to them in the initial round of summary judgment briefing. Instead, they argue that *Lexmark* "altered" the materiality of whether Funai's suppliers were covered by the license. I disagree. Funai was always required to show its suppliers were licensed in order to prevail on its motion. If the suppliers were not covered by the license, then Funai would have no claim that it could be covered by the license. Thus, I find that Plaintiffs have waived the argument that the Panasonic subsidiaries are not covered by the license. *See United States v. Hoffecker*, 530 F.3d 137, 163 (3d Cir.

12

2008) (finding party waived an argument raised for the first time in a notice of subsequent authority).[11]

## C. Patent Exhaustion

"When a patentee sells one of its products,... the patentee can no longer control that item through the patent laws—its patent rights are said to 'exhaust'." *Lexmark*, 137 S. Ct. at 1529. The same is true when a licensee sells a patented product. "That licensee's sale is treated, for purposes of patent exhaustion, as if the patentee made the sale itself. The result: The sale exhausts the patentee's rights in that item." *Id.* at 1535.

On May 30, 2017, the Supreme Court issued its opinion in *Lexmark*. That opinion addressed the law on patent exhaustion in two ways. First, it held that international sales of a product count for exhaustion purposes. Second, it held that a patentee could not impose post-sale restrictions through the patent laws. *Id.* at 1531. That is, even if a patentee places clear post-sale restrictions on a product through contract, its patent rights in that product are still exhausted.

In reaching its holding on post-sale restrictions, the Court reviewed the law on patent exhaustion in the license context. It explained, "A patentee's authority to

---

[11] Further, I am dubious that Plaintiffs' argument, if allowed, would create a dispute of fact that was *material*. Plaintiffs rely on a statement by a PLCD executive that says PLCD sells LCDs to the Panasonic subsidiaries. (D.I. 480 at 7 (citing D.I. 316 at ¶ 6)). Even if PLCD "s[old]" or "otherwise dispos[ed] of" the licensed products to the Panasonic subsidiaries on their way to Funai, the patentee's rights would still be exhausted.

13

limit *licensees* does not... mean that patentees can use licenses to impose post-sale restrictions on *purchasers* that are enforceable through the patent laws." *Id.* at 1534–35. "So long as a licensee complies with the license when selling an item, the patentee has, in effect, authorized the sale," and the patentee's rights are exhausted. *Id.* at 1535.

Plaintiffs argue that the licensees did not comply with the licenses when selling LCD components to Toshiba and Funai for placement in end-user products.[12] I disagree. The licenses limit the ability of the licensees to manufacture end-user products themselves by clarifying that those products are not LCD modules. There is nothing in the licenses, however, that limits to whom the licensees can sell the licensed products.[13] *Contrast Gen. Talking Pictures Corp. v. W. Elec. Co.*, 304 U.S. 175, 181–82 (1938) (allowing infringement case against industry purchaser of amplifiers when supplier's license was explicitly limited to sales for non-commercial use).

The agreements do not contain any relevant language limiting to whom the licensed products can be sold to or for what purpose they can be sold. The Supreme

---

[12] Both Samsung and Funai filed a notice of subsequent authority when *Lexmark* was handed down. Plaintiffs only responded to Funai's motion. Thus, I am assuming it would make the same arguments against Samsung.

[13] That is, in any relevant way. The Samsung license does limit Samsung's ability to make or sell LCDs "designed" for incorporation into "projection displays, or electric view finders of digital still cameras or camcorders." (D.I. 312-1 Ex. 1 at § 1.8). The accused products here are televisions, laptops, and tablets.

14

Court's *Lexmark* decision was an outgrowth of in the law's preference against restraints on alienation. 137 S. Ct. at 1531–34. It explained that the patent exhaustion doctrine "marks the point where patent rights yield to the common law principle against restraints on alienation." *Id.* at 1531. Thus, to the extent a contract ought to be interpreted against the backdrop of public policy, a reading of a license agreement that purports to restrict such alienation would be disfavored. These licenses, anyhow, unambiguously contain no such restriction.

Plaintiffs do not contend that Samsung or Panasonic otherwise violated the terms of the license. Therefore, I am granting Samsung's motions and Funai's motion for partial summary judgment of no infringement.

### IV. CONCLUSION

I am granting Defendant Toshiba's motion (No. 14-803 D.I. 303), Defendant Funai's motion (No. 14-804 D.I. 314), and Intervenor Samsung's motions (No. 14-803 D.I. 337; No. 14-804 D.I. 310) for partial summary judgment of no infringement. Within two weeks of this opinion, the parties are directed to file a joint status report indicating the status of the case in light of this ruling. An order consistent with this opinion will follow.